All right, our next case for this morning is Thomas Censke v. United States, Mr. Bouvier. Thank you, Your Honor. Thank you. May it please the court, Dan Bouvier for plaintiff appellant Thomas Censke. As the court is aware, the complexion of this case has changed somewhat since the party's opening briefs. The government a few weeks ago changed one of its legal positions in the case, now agreeing with Mr. Censke that submission of the SF-95 to any of the BOP's offices, including the central office, suffices for the presentment requirement under the FTCA. So I have a question for you about that. You know, I'm looking at this example in the program statement, and you're quite right that it has materially changed some of the aspects of this case. So my question is this. If the agency of the United States government that is the potential defendant that the United States would take over to represent for Federal Tort Claims Act happens to be a prison, then why isn't it enough under the logic of this program statement to deliver the complaint to the prison? The prison, of course, I've printed out all the organizational charts. The prison is under the Bureau of Prisons, which is part of the Department of Justice. And then if you look at the BOP organizational chart, you find the north-central region. And then if you go to the north-central region's organizational materials, you find 21 institutions, one private facility, five RRM field offices, and it describes which states they're in. But under the 21 institutions, there's Tara Hote. The idea, Judge, if I take your meaning, being that Mr. Sinskey could have, under that reading of the program statement, simply have submitted the claim to the institution that actually incarcerated him at the time. Because, I mean, if it were HUD, you wouldn't have that option. You know, they have offices around. But I understand this program statement, which says, delivered to the Department of Energy October 12, then DOJ October 19, then the central office October 24, et cetera, et cetera. The DOE effort doesn't count. But as soon as it gets in the hands of the Department of Justice October 19, we have receipt. So even if under the regulation we were to take a strict understanding of receipt, I don't know why receipt wouldn't occur when the prison has it. Well, that's right, Your Honor. I agree. I think that is a reading that is entirely fair under the BOP's public-facing explanation of their terms. And, Your Honor, I think it also gets to the core of this case, which is that the FTCA is not a regime written for prisoners. It governs all types of claims for prisoners and for non-incarcerated filers alike. So the first time you get it to an office of the agency that you are concerned with, whether it's the Veterans Administration or HUD or whether it's HHS or whether it's the Department of Justice through the BOP, delivery to some agency of that entity is what's called for. That's right, Judge, especially because under the government's contention of the way that they might face prejudice in this case, any possible prejudice the government might face is alleviated as soon as anyone in that agency receives notice of the claim. Under your description, Your Honor, the warden in receipt of the claim at the penitentiary that Mr. Senske was incarcerated in could simply shoot an email to the tort office or to the regional office or to the BOP's central office, whichever, and accomplish the exact requirement that the government is putting forth is sacrosanct under the FTCA, namely that the government have an opportunity to consider the claim. To the application of the prisoner mailbox rule in this case specifically, Your Honor, as I said, it is key to consider that if I'd been struck by a post van en route to the court this morning and I had wished to file an FTCA claim, I could, if I had wanted and deemed it necessary to ensure delivery of the claim, hop in my car and drive all the way to the Postmaster General's office to ensure actual physical delivery. Mr. Senske never had that opportunity. Well, could you go to the loop post office across the street? Well, it might depend, Your Honor, on the post office's particular promulgated regulations, if there are any, as to the FTCA. I don't know them. But as to the BOP regulations, and in this case, Your Honor, I can say, they allowed for submission of the claim, presentment, as the statute requires, by mailing or delivery. Mr. Senske had only one of those options available to him, which is why the counterbalancing effect that the prisoner mailbox rule has, as this Court has repeatedly remarked upon, is particularly called for here. Can I ask a clarifying question? You are also arguing that the common law mailbox rule applies. And what I understand you to be saying, but correct me if I'm wrong, is that under that rule there is a presumption of receipt. So it's a receipt-based rule, a presumption of receipt within the ordinary number of days that it would take the mail to wend its way from, you know, Terre Haute, Indiana, to central office. So he mails it December 7th. If we assume it takes it a week to get to Washington, which is probably generous, it's probably less than that, there would be a presumption that BOP got it on the 14th, which BOP would then be entitled to rebut with evidence. That's right, Judge. The common law rule provides a rebuttable presumption of receipt. So it's a receipt-based rule, which would satisfy the district court's concerns about the way these and, indeed, the things that we've said before about these regulations. That's exactly right. And the section 14.2, which qualifies the presentment requirement under the BOP's gloss as requiring receipt, is the type of rule particularly primed for application of the common law rule because, as Your Honor points out, they're both receipt-based. The 11th Circuit in Barnett got this right. This is just a traditional means of weighing evidence, the common law mailbox rule is. It's a means of determining when receipt occurred. The district court in this case misapplied the rule by misinterpreting it. Essentially, the district court viewed this through the lens of a false dichotomy, namely that receipt may be measured either, or rather that presentment may be measured, by either receipt or by mailing. But that ignores the function of the common law mailbox rule, which is to use one to judge the other, to use the fact of mailing. Well, the date of mailing gives rise to some presumption. That's right. Because we have this very lovely idea that the mails work and they deliver things within a certain window of time. In fact, I think it's usually two days, but I was being generous to say a week. Well, that's right, Judge. And the facts of this case are particularly well-suited to application of the rule because it's even more than, as Your Honor says, the generous week that was available. Mr. Sinski filed this or submitted it to the prison mailing authorities nine days in advance of the deadline. Nevertheless, because it's a rebuttable presumption under the common law, if, for example, the guard or somebody at Terre Haute sat on that letter for a week and it doesn't show up in the Washington central office until the 18th of December after the two years have run, you lose, right? Without the prison mailbox rule. Absent equitable considerations, yes, Judge. Okay, sorry. I didn't mean to forget those. Absent those, but putting aside how fair the BOP could be to sit on the claim and thereby inoculate themselves against it. And whether you could prove it, but there's that problem as well. That's true, Judge. So that's why I'd like to focus back again for a moment on the prison mailbox rule, which is not rebuttable as I understand it. And the reason it was adopted in the first place had to do with prisons keeping logs of outgoing mail, as noted in the Houston case. So there seem to be several circuits against that position. The Second Circuit has ruled in favor of applying the prison mailbox rule to tort claims. Is that the lineup as you see it? Yes, in the Tapier-Otis case. So time for us to choose. Time for the court to choose. And, in fact, the facts, as well suited as they are for application of the common law rule, equally well suited for application of the prisoner rule, and this is an opportunity for the court to lay down an easily administrable rule that the court need do only via a straightforward application of the Houston case. Well, hold on. What about facts? In Tapier-Otis, I mean, it doesn't even – it cites facts in the footnote. It doesn't even discuss it. Judge, so the facts— There's a substantial weight of authority against you on this. Well, I disagree, Your Honor. Well, line it up. What's for you? So, first of all, just a gloss on facts or an answer to your question on facts. The facts case requires that if there is a countervailing rule that precludes application of the prisoner mailbox rule that is housed in the text, the rule shouldn't be applied. But here's the difference, Judge. The language, the timing mechanism language here is as equally – let me put it this way, Judge. The language here is equal in formulation to the language in Houston and not to the language in facts. Here's how. So in Houston, the notice of appeal would be deemed to be timely filed when filed with the clerk. Under the Statutes and Rules of Federal Appellate Procedure at the time, that was a requirement, filed with the clerk. And yet, recognizing the inequitable circumstances prisoners face in getting their claims on file, the Supreme Court recognized that the moment of filing could be said to occur far in advance of the clerk actually ever getting his hands on that paper or, indeed, far in advance of his office ever actually receiving it. Filed with the clerk, and here presented is what is defined as received by the BOP. That's susceptible to the same formulation as in Houston and calls for the same application and the same result. In facts, in contrast, the requirement was that the detainee shall have cause to be delivered the detainer request to start the clock ticking on the receiving prosecutor. Right, right. The issue in facts then was that the court viewed that language, that timing language, as facially indeterminate and resolved the indeterminacy by reference to what the court called the sense of the matter and the worst-case scenarios under the application. In other words, use the worst-case applications to discern drafter intent. And they viewed there that the largest prejudice that might occur under application of the rule would be that the prosecutor in Michigan, in tardy receipt of the detainer request, would be forever foreclosed from getting into court. Here, the opposite is true. First of all, we don't have an indeterminacy of language because the received by the BOP is as susceptible to the Houston formulation as was received by the clerk in that case. But second to the prejudice question, the burden allocation question, it is Mr. Sinsky, the person in the cell eager to pursue his claim, who faces the uphill battle and faces the doors of justice being closed on his claim, not the government. I see that I'm eating into my time, so if there are no press questions at this time, I'll reserve for rebuttal. That would be fine. Thank you. All right. Mr. Ross. Thank you, Your Honor. May it please the Court, Case in Ross, the United States. The text and implementing regulations of the Federal Tort Claims Act actually make clear, as Plaintiff Counsel himself admits, that there's no indeterminacy such that presentment means actual receipt. But here's my problem. It seems to me the government has a very easy way never to have to defend a Federal Tort Claim lawsuit brought by a prisoner from a federal prison. All they have to do is have a box where mail designated to file an administrative grievance is placed, where it will then sit for the appropriate amount of time, and then when it goes to whichever office, a regional office, a central office, the BOP says, Oh, it's too late. You failed timing requirement number one under the statute. Nobody's talking about it. We all understand the second one was satisfied here. So that's that. And I don't think that can be right. Now, I do think that perhaps giving it to the prison, which is an agency, a sub-agency of BOP, actually satisfies every receipt requirement you could come up with. He gives it to them. It's, you know, the game is afoot, and off everybody goes. So two responses, Your Honor. First, it's actually in the agency's interest to investigate claims when they're filed.  Excuse me? Was it investigated here? Yes, Your Honor. The agency investigated the claim on the merits and denied it. And without discovering that the date had been wrong and he was not in the correct prison at the date that he gave notice of? So based on the date that Mr. Senske wrote on his SF-95, the agency investigated the claims as he asserted them and found no wrongdoing. Of course, the merits are not before this court at this point. But in response to Judge Wood's question, I can point you to 28 CFR 543.32. Subsection I actually specifically explains that, in general, the agency will provide a response to a prisoner's claim, administrative claim, within six months. And if the agency has not responded, then the prisoner may proceed to court. No, I understand that. I guess I'm stuck back on the actually I happen to like the way the Federal Tort Claims Act operates in general. I think it's an excellent model that might be used more by the states. But the fact is, for this particular set of claims, the Bureau of Prisons, as you've conceded, can receive it through any part of the Bureau of Prisons. And in your concession, it was, you know, you gave up the argument that it had to get all the way to the north central region and that it was okay to be in the central office. But I don't know why it doesn't operate in the other direction as well. Because if you go to the north central region. So, Your Honor, actually, I can direct you to page four of the program statement that you, I believe, referenced with the counsel. The first or the second paragraph explicitly says, institution staff will not accept a claim filed at the institution. That is, prison officials do not accept. How is that consistent with the statute or the regulations? Because the statute and regulations explain that the agency itself must actually receive the claims. But the agency itself. Why isn't it enough just to give it to the guard? So, both this court and the Sixth Circuit have rejected an analogous argument as concerns the postal service. So, in this court in Overstreet and the Sixth Circuit in Willis, both explain that simply if a plaintiff has a claim against a postal service, say by injury by a postal truck, you can't simply walk into a postal service and deliver your claim. I haven't looked at those regs. Could you go back to the BOP regs and the statute as applied to handing it to a guard? Excuse me, Your Honor? As applied to handing the claim to a guard. So, by the agency's interpretation of the regulations, that's not presentment. Can you work from the text of the regulation? So, the Attorney General's regulation, 28 CFR 14.2, requires that it must be first presented to the appropriate federal agency. And the purpose of the Federal Claims Act's presentment is that the agency actually be able to investigate and possibly settle the claim. So, you're taking the position that the prisons are not part of the BOP? No, Your Honor. Or that we should really focus on purpose more than the strict text of the regulations. An interesting argument. No, Your Honor. Sorry if my argument was construed that way. Rather that by delivering a claim to a prison guard, that won't initiate the investigation process. That will rather, effectively, that's a different conduit to put it in the prison mail. Just the same way as possibly someone injured on Forest Service land would not be able to give a claim to a Forest Ranger. Analogies to people who are not in prison are really not very persuasive here, I have to say, because of the unique obstacles that the Supreme Court and we have repeatedly recognized. That's true, Your Honor. And the vulnerability of people to manipulation by the very people who are supposed to be helping them. You have a nice, sunny idea that they're eager to investigate these claims, but Mr. Senske's case is a great example. He puts this in the prison mail nine days ahead of time. Any rational person would think that a piece of mail can move through the United States within the scope of nine days. And you take the position, no, we don't think it did. But maybe he was on time, and certainly in terms of the common law mailing rule. If the BOP is careless and loses it, on whom should that rest? Now, to be clear, there's no indication that the BOP lost to the claim in this case. It was received by the agency. Eventually. But, you know, suppose ordinary mailing takes seven days. So how much cushion does a prisoner need to put in? He puts it in the mail a week, a month. Does it take six months to get to the BOP through the U.S. mail? Now, for one, it's worth noting that the district court in this case specifically found that there was an entire year period. No, that's different. I want to know if somebody knows his deadline is December the 16th, how far in advance does that person in a prison have to give his complaint to the prison guard to be sure that he's going to meet the deadline? Now, you don't have any theory of that that I can hear. Well, even if, for even non-prisoners, if you would not be able to present your prisoners are different, the Supreme court has made that clear. We've made it clear. They do not have the choice of hand delivery to anybody other than the guard. I acknowledge that your honor, but, and, and non-prisoners can use FedEx or overnight. They can use receipts, return receipts. All of these aspects are equally available to prisoners. Oh, I don't think so. I'm not, uh, let me ask, um, By BOP his own assertions, all of these methods of mailing are available to prisoners. It's simply a question of whether they have the financial FedEx come to prisons to pick stuff up from prisoners. So in all circumstances, when a prisoner has mail to leave the prison, it is given to the appropriate official within the prison. And that is taken usually within the same business day to mail. Yes. How about FedEx or UPS? The same logic. Does that happen? Is it, is the mail screened on the way out? It depends on the kind of mail your honor. So would something like this be screened? So, um, there's no facts in the record describing it. I'm asking for your procedures. You know, when you get something, that's not like a letter to an attorney that's labeled legal mail, when you get a complaint, would that be open to make sure that there was no anthrax in it or, you know, other evil things. So in this case, Mr. Senske alleges that he mailed his administrative claim first class mail. Um, if, if, which he should be entitled to do by the way, of course. Um, and in this case, um, we believe it was done by regular mail. In that case, there would have been an unsealed envelope given to prison officials that would be subject to screening for, um, standards. So they might even know that it's an administrative complaint. And if they think Mr. Senske is annoying, they could just put it off to the side and wait a week or so and say, Oh look, he has a December 16th deadline. You know, let's, let's not mail it until the 17th. Um, in fact that would, that cuts exactly the opposite way in this case, your honor, because he misstated the form. So if he just made a mistake, he, you know, but the prison officials would not have known that, especially because this was at a different facility from where his purported injuries took place. So there's a separately, I just want to complete the answer to the, the mail. Um, prisoners are also entitled to, to mail by quote special mail, which is to the court or to attorneys or in this case, filing a tort claim in which case, um, it would not be subject to exactly the same screening procedures and would be given a special envelope. And it would be slightly more expedited, but it would, that type of mail again, leaves the institutions on a daily basis. Does the Bureau of prisons log outgoing mail and packages? Uh, yes they do your honor. So that would be a, as in Houston, a bright line record of, of mailing. Um, likely, likely so. Okay. Um, are there any of the policy considerations that were decisive in Houston that were, that would not be applicable here? Now, whatever the policy considerations that issue in Houston, the Supreme court subsequently foreclosed consideration of policy. Excuse me. If the text is clear, in fact, versus Michigan, how can we say the text is clear when everybody is all over the block with it? And could you answer my question as well as chief judge Woods, uh,  Yes. So arguably the, the same type of parties are at issue in a word issue at Houston versus lack as in this case. However, the text makes clear that presentment means actual receipt by the agency. So I take it then your, your argument is strictly textual. And as the Supreme court explained in facts versus Michigan, both the majority and the dissent looked specifically to the text. I understood, frankly, I understood facts to be much more pragmatic than textual to simply the, the, the consequences were so different. It ain't namely that if, that if the agency never received, uh, the petition under, under facts, then the prisoner goes free. It's like a default judgment. If in, under the FTCA, if you, if you failed to respond in time, that would not make any sense for the prison mailbox rule. On the other hand, in this circumstance, it's much more like Houston from a practical standpoint. I understand we can argue about text, but, but, but just so that we understand that the policy considerations sound pretty much the same. There's also the fact that the Congress created the presentment requirement, excuse me, so that the agencies could investigate and settle claims. The Supreme court explained in McNeil that the vast majority, what do you think our requirement is? You know, obviously if you file a notice of appeal in the court of appeals, we expect the notice to be in that day. We don't want to, I mean, of course this is pre electronic filing, but you know, we didn't want to hear that you had put it in the mail that day. We dismissed as jurisdictionally out of time, anything like that, except for the cases with the prison mailbox rule. And the same thing is now true in the district courts for virtually any kind of filing. So it's not that presentment isn't very important to the courts to know what cases are proceeding there. It's important for statutes of limitations. What on what date was the case filed? That could be a do or die moment for the case. So I don't know why you think this is more important somehow than the court deadlines involved. Not necessarily that it's more important, your honor, but rather that the text is clear. The prison mailbox, what was unclear about the text? It has to be filed by a certain date. I believe the Supreme court found that that was amenable to multiple determinations and that policy and equity equitable considerations for the court. It's a rule. However, here, so if I present something to judge Hamilton and I say, please give this to mr. Ross, uh, you don't have it. I haven't presented anything. I can't use an agent to me. Uh, you've presented it to judge Hamilton as my agent, I suppose. So, yes. Um, but if even if the statutory text is unclear, the regulations themselves explicitly require actual receipt and every court of appeals to act, to wrestle with the text in this case or in this circumstance has resolved. The case in favor of the government finding that actual presentment is required. Now the 11th circuit and Barnett, well, they're equating presentment with receipt. Those are not the same words. So the, the regulation says actually receives the claim effectively interpreting presentment as actually, I'm sorry, your honor, uh, the agency receives from a claimant. Um, and additionally, is that different from a court receiving something for filing in the case of filing? There's not an actual receipt requirement per se, but there is everybody except prisoners. There certainly is correct. In the, the, the term filing does not entail or require actual receipt from prisoners. That's the exception. However, it's also worth emphasizing that a statute of limitations itself as runs against the United States is a strict waiver of sovereign immunity. And every court, again, to consider this, uh, statutory text has found that it must be strictly construed in favor of the sovereign. And that's in the rationale of all those cases talking about the common law rule, right? Which applies equally to the prison mailbox rule, your honor. But the common law rule is something where there are facts missing in this record as well, because there'd be a presumption of receipt, your magic word, a presumption of receipt within the ordinary time that we take mail to get from Terre Haute, Indiana to Washington. And as I say, even if we thought counterfactually that that was a week, uh, there's a presumption that his, um, his mailing got there within the required time. So it's actually, I'm just looking at the language of rule four, a one capital a, that happens to be civil cases. The notice of appeal required must be filed with the district court within 30 days after the judgment may be filed by. And everybody has, especially if you go over and you look at the, at the mailbox rule, um, it's a question of it's, if it's in the internal mail system on or before the last day for filing with all these, you know, just sort of deems filing to be when the institution gets it. Exactly. When that important when the institution receives it, your honor. So, right. So he can't say it's sitting there in his cell. They haven't gotten it yet. I mean, your, your interest here seems to me, and I think you make a fair point on this front that your interest seems to be in conducting a timely investigation.  Right. That's the point you're making. Um, but there's a way to route the mail from, you know, the local jail to the central office, the regional office, wherever it needs to go without an eternity passing. Um, right. So it'll, it'll tell, tell the jailers, get the mail out within a week or so. And because we need to investigate this before all this stuff goes stale. So it's our understanding. That's exactly what happened in this case runner. Um, as I explained, um, so they didn't bother to mail it right away because it, according to you was not received. Of course we don't know. Maybe if there are actually, if I could follow up, you said you're ready to present evidence about actual receipt in Washington. What will that show? So the government has a document that explains that the central office, which is where Mr. Senske alleged that he filed his claim was presented on February 3rd, 2016. Now we're unclear. February 3rd. So it takes two months for a letter to get from Tara Holt to Washington, DC. So we're unclear. Currently. Yes. Is what you're going to tell me because they're the factual record in this case, your honor is very thin. We are unaware of the exact circumstances of this document, but, um, all we can say is that that was the date that it was timestamped by the central office. This is sort of racist. So, I mean, I, I, or for, for equitable tolling, if nothing else. Um, but, uh, okay. Um, it's, it may be worth emphasizing to the, the only date establishing the December 7th mailing is Mr. Senske's own statement. And that's easily verifiable. If he's right, he's right. And if he's not, you would, you just admitted that for Houston against lack purposes and we'll foresee you have those records. And that's why the case on, um, for, excuse me. That's why the case is right for further factual development in district court. And why the, but we, but unless we were to disagree with you either about the prison mailbox rule or the scope of further factual development might be affected by our view on the common law mailbox rule. In, in so doing the court would go against the great weight of authority, um, pointing the other direction, Your Honor. So that's why we have different courts of appeals. Of course. Uh, the government again requests that you vacate and rematch to the district court. Thank you. All right. Well, thank you very much, Mr. Bobbier. Thank you, Your Honor. A few brief points in rebuttal. First to judge Woods question put to the government about the cushion here. The FTCA requires that you present your claim within two years. That's the requirement. So this idea that the prisoner might actually only get a year and a half because it takes six months to process the mail and get it out the door isn't what the statute permits in terms of the amount of time to get something on file. And especially here, Your Honor, where not only did it take two months for the mailing to go out the door and get to the office that prior to its change in legal opinion, the government held as being the only office that could be in receipt of the claim. We now hear, although this isn't in the record, that the mailing might have to the government's description, not have arrived anywhere within two months. So we're, we're eating away at the two year amount of time set forth to get a claim on record, which affects a collapsing of the prisoner's right under the FTCA in a way that a non-incarcerated litigant would not see his right collapse. It also affects the investigation possibilities if this all drags on forever. Well, and that's yet another reason why an easily administrable rule, which as the government just conceded, it can be easily established by conferring with their own well-kept annals as to when post goes out the door is a better solution here. We're now up on appeal on the question of, uh, the mailing and at what point presentment is said to be received. The court can do away with the morass that we now have delved into by simply applying the straightforward language in Houston, recognizing the inequitable circumstances, the Supreme court in this court repeatedly have underscored given the prisoner's condition and applying the prisoner mailbox rule here. If you, you can do,  I mean, you're, I think you make a good point in that you can do that, but you have to, do you not, you have to read facts somewhat narrowly. Well, I think you need to read facts no more narrowly than exactly what it says. Judge, here's an example. In facts, the Supreme court pointed to, it may be proper to read it narrowly. There may be nothing wrong with that, but I think that stands for the broad proposition that you have to, you have to just handcuff yourself to the text no matter what that's you. You'd rather not stand on that ground. I think, well, that's right, judge, but also facts says a countervailing rule matters only when the rule is countervailing to judge Hamilton's point. The circumstances in that case were completely different and really antithetical to the issues and burden allocations here, but also the Supreme court pointed to textual indications in that case that further identified an end point. Actual delivery is the timing mechanism. For example, I would also add that facts had a comedy overlay. The court was unwilling to shut off the ability of a state to bring a proper prosecution. That too, judge, which again is not an issue. I assume running down on time. So your honors, for the reasons recited here, I'd ask that the court reverse the district court summary judgment order and remand for proceedings on the merits. If I could just ask briefly the, I'm trying to think about what might make sense here. If we do not, both sides agree, you want to remand us of some, some extent. And it sounds to me like, um, it might make sense to, uh, remand for fact finding as to both the date of mailing and the date of receipt, uh, with whatever legal guidance we can, can offer. But that, uh, in essence, it would make sense to give the district judge the opportunity and the factual record that would be relevant regardless of the ultimate legal rule that's applied. The judge, if you're looking for the cleanest way to clear this up, the answer is the application of the prisoner mailbox rule, which doesn't require that factual remand because as all parties agree, Mr. Sinski mailed the claim timely, which, which gets us out of this fact problem entirely. You're saying there's a concession. It did go into the mail on the seventh. Is that right? Mr. Ross. That's all right. So we'll, we'll, we'll look into that. May or may not. What are you relying upon for that though? I mean, you're, you're saying that for a reason where, what, what's causing you to say that, uh, say that, uh, no fact that it went, that it went out on the seventh and it's, that's pretty clear. Well, judge again, the government can better represent the government's position, but it is my understanding that the record is clear and there has been no contention from the government at any point in any file that Mr. Sinski did not. In fact, timely mail his SF 95 on December 7th. That would be nine days in advance of the deadline, which the judge Hamilton's question obviates the need for this factual. Um, as you say that though, are you thinking about a document or what? Are you just thinking about it? Well, in the background of the case, it's never been contested. Just assumed. Yeah. Okay. I don't have in mind a specific verbatim concession, your honor. I don't. Similarly, I do not recall any on the record. Um, rejoinder. The government has levied as to that date. Okay. You can look into that. So, okay. Thank you. All right. Thank you very much. Thanks to both council. We'll take the case under advisement.